USCA1 Opinion

 

 February 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1947 DONATO F. PIZZUTI, Plaintiff, Appellant, v. POLAROID CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Joseph J. Brodigan, with whom William D. Gardiner, James M. __________________ ___________________ ________ Langan, and Langan, Dempsey & Brodigan, were on brief for ______ _____________________________ appellant. Francis H. Fox, with whom Scott C. Moriearty, Marianne ________________ ___________________ ________ Meacham and Bingham, Dana & Gould, were on brief for appellee. _______ _____________________ ____________________ ____________________ TORRUELLA, Circuit Judge. This appeal arises out of a _____________ summary judgment granted on behalf of Polaroid Corporation ("Polaroid") dismissing a breach of contract action brought by a former employee, Donato F. Pizzuti ("Pizzuti").1 We affirm. The crux of the lawsuit concerns the interpretation of Polaroid's Profit Sharing Retirement Plan (the "Retirement Plan") as well as that company's Employee Incentive Compensation Plan (the "Bonus Plan") with respect to Pizzuti's contention that Polaroid's employer contributions from April, 1976 to January, 1986 were undersubscribed. Pizzuti based this contention on the winning and eventual settlement of a patent infringement suit by Polaroid against Eastman Kodak Co. ("Kodak") pursuant to which Kodak paid approximately $925 million in cash and short-term securities to Polaroid for infringements occurring from 1976 through 1986. Pizzuti contends that those payments require the restatement of Polaroid's profits for those years and in turn the payment of the additional benefits and bonuses that would have been received from these additional receipts. Although Pizzuti objects to the granting of summary judgment, we believe otherwise. This is a classic case for summary judgment: no material facts are in dispute and disposition is dependent only on the legal interpretation of the Retirement and Bonus Plans. See Fed. R. Civ. P. 56. The ___ standard of review of the district court's decision is de novo, __ ____ ____________________ 1 Although originally brought as a class action in the Massachusetts Superior Court, it was never certified as such either by the state court or by the district court after it was removed to the federal court. as only issues of law are involved. ITT Corp. v. LTX Corp., 926 _________ _________ F.2d 1258, 1261 (1st Cir. 1991). The Retirement Plan is a contribution plan as defined in 3(34) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. 1002(34), and is thus subject to construction pursuant to federal common law. Firestone Tire & ________________ Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989). In construing ___________ _____ ERISA-governed plans, we apply "common-sense canons of contract interpretation." Wickman v. Northwestern Nat'l Ins. Co., 908 _______ _____________________________ F.2d 1077, 1084 (1st Cir.) (quoting Burnham v. Guardian Life Ins. _______ __________________ Co., 873 F.2d 486, 489 (1st Cir. 1989)), cert. denied, 111 S. Ct. ___ _____ ______ 581 (1990). Although the Bonus Plan is governed by Massachusetts law, the standard of interpretation is similar, requiring the court to give nonambiguous terms their usual and ordinary meaning. Ober v. National Casualty Co., 318 Mass. 27, 30, 60 ____ ______________________ N.E.2d 90, 91 (1945). A reading of the Plan leads us to the same conclusion reached by the district court: "[n]othing in the language of either plan requires Polaroid to revisit a previously-determined net profit and recalculate that figure based upon gains or losses resulting from subsequent litigation, or any other source." Pizzuti v. Polaroid Corp., No. 91-13018-H, slip op. at 2 (D. _______ _______________ Mass. July 9, 1992). Section 3.01 of the Retirement Plan provides: [T]he term "net profit" for any Plan Year shall mean the total on a consolidated basis of the net earnings of [Polaroid and its subsidiaries] for such year -3- (excluding gains from the sale, exchange or other disposition of capital or depreciable assets not in the ordinary course of business), as computed by [Polaroid's] accountants in accordance ______________ with standard accounting practices . . . __________________________________ [Polaroid's] determination of such net profits shall be conclusive for all _____________________ purposes under the Plan. _______________________ (Emphasis added.). The undisputed evidence demonstrates that standard accounting practices require that litigation judgments or settlements may only be recognized as income in the year received. This fact is reinforced by Polaroid's recognition of the entire $925 million settlement amount as 1991 income, notwithstanding that Polaroid undoubtedly would have benefited under the tax code had it been allowed to redistribute this settlement as proposed by Pizzuti. Section 3.01 of the Bonus Plan also provides for calculation of "net profits" on an annual basis "by the Company's accountants in accordance with standard accounting practices," and also states that "[t]he Company's determination of such net profit shall be conclusive for all purposes under the Plan." There is nothing ambiguous in the indicated language of the Plans. See ITT Corp. v. LTX Corp., supra at 1261 (whether ___ _________ _________ _____ contract term is ambiguous is question of law for the court). It requires that net profits be determined annually, on the year in which the income is received, and that the Company's determination in this respect is decisive and final as regards the Plans. There is nothing more to be said. -4- The judgment of the district court is affirmed. Costs ________ to appellee. -5-